1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   CRAIG BOLTON, et al.                          CASE NO. C15-1607 MJP

11                       Plaintiffs,              ORDER ON CROSS-MOTIONS FOR
                                                  SUMMARY JUDGMENT
12         v.

13   PENNY SUE PRITZKER, et al.

14                       Defendants.

15

16         THIS MATTER comes before the Court on the Parties' Cross-Motions for Summary

17   Judgment, (Dkt. Nos. 13, 18).  Having reviewed the Motions, the response briefs, (Dkt. Nos. 21,

18   23), and the related record, the Court hereby GRANTS Defendants' Motion and DENIES

19   Plaintiffs' Motion.

20                                       **Background**

21   **A.  Regulatory Background**

22         Congress enacted the Magnuson-Stevens Fishery Conservation and Management Act

23   ("MSA") to, among other things, "conserve and manage the fishery resources found off the

24   coasts of the United States . . ."  16 U.S.C.§1801(b)(1).

1    To accomplish this goal, Congress made it unlawful to violate any provision of the MSA

2   or any regulation issued pursuant to the MSA.  16 U.S.C.§ 1857(1)(A).  The MSA provides for a

3   maximum civil penalty of $140,000 per violation.  16 U.S.C. § 1858(a).  Before imposing a

4   penalty under the MSA, the National Oceanic and Atmospheric Administration ("NOAA") is

5   required to consider the following factors: (a) the nature, circumstances, extent, and gravity of

6   the violations, (b) the degree of the violator's culpability, and (c) such other matters as justice

7   may require.  16 U.S.C. § 1858(a); 15 C.F.R. § 904.108(a).  NOAA may also, but is not required

8   to, consider the ability of the violator to pay a given penalty.  Id.

9    This case involves the Alaska-based fishery regulations found at 50 C.F.R. Part 679.

10  (Dkt. No. 18 at 9.)   These regulations govern commercial fishing for groundfish by fishing

11  vessels in the Exclusive Economic Zone ("EEZ") off the coast of Alaska.  (Id.)  Among other

12  things, these regulations require that each vessel have a valid groundfish license endorsement on

13  board at all times while fishing in the Western Gulf and the vessel cannot exceed the maximum

14  overall length specified on the license.  See 50 C.F.R. § 679.4(k)(1)(i).

15   The MSA provides that any person who has been assessed a civil penalty may obtain

16  judicial review by filing a complaint against the Secretary of the United States Department of

17  Commerce in the appropriate United States District Court within 30 days of the date of the final

18  penalty assessment.  16 U.S.C. § 1858(b).  Upon review, "[t]he findings and order of the

19  Secretary shall be set aside by such court if they are not found to be supported by substantial

20  evidence" as provided in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).  See 16

21  U.S.C. § 1858.

22   **B.  Factual Background**

23   The events leading to this dispute began in early 2001 with a fishing trawler named the

24  Amber Dawn.  (AR 672.)  The owner of the Amber Dawn, Mr. Burton Charles Parker, owned a

1  groundfish license, LLG 2608, authorizing the Amber Dawn to fish in the Western Gulf of

2  Alaska.  (Id.)

3          On March 5, 2001, the Amber Dawn sank, resulting in the loss of its captain and a crew

4  member.  (Id.)  Mr. Parker retained possession of LLG 2608, and the fishing right provided by it.

5  (Id.)  Mr. Parker believed that the vessel's LLG could merge with another vessel that was similar

6  in size and performed similar functions and that all the rights from the Amber Dawn would

7  transfer to the other vessel.  (Id.)

8          Mr. Parker discussed this prospect with Mr. Christopher Daniel Peterson, the owner of a

9  vessel named the Pacific Challenger.  (Id.)  Mr. Peterson possessed a groundfish license for the

10 Pacific Challenger, LLG 1239, which contained endorsements nearly identical to those in Mr.

11 Parker's LLG 2608.  (Id.)  Both individuals agreed to transfer possession of their respective

12 groundfish licenses to Pacific Dawn, LLC, a new corporation that would own the Pacific

13 Challenger, and in which they would be equal partners.  (Id.)

14         NOAA's Restricted Access Management ("RAM") division oversees the issuance of

15 permits and licenses.  (AR 670.)  On December 8, 2004, RAM issued a letter to Mr. Parker and

16 and Pacific Dawn, LLC verifying that ownership of Mr. Parker's LLG 2608 was transferred to

17 Pacific Dawn, LLC, and both licenses (LLG 1239 and LLG 2608) authorized the Pacific

18 Challenger to fish in the Western Gulf of Alaska and other areas.  (AR 672, 1472.) However, the

19 licenses differed in one respect: LLG 2608 carried a maximum overall length of 124 feet (the

20 length of the sunken Amber Dawn), while LLG 1239 carried a maximum overall length of 104

21 feet.  (AR 672.)

22         In 2005, Pacific Dawn, LLC notified RAM that it had changed its contact information for

23 all correspondence related to the Pacific Challenger.  (AR 1643.)

24

In 2008, Pacific Dawn, LLC spent $1.2 million to lengthen the Pacific Challenger from 104 feet to 116 feet.  (AR 1149.)  The firm responsible for the design of the renovations sent a letter to RAM in December 2008 confirming the new overall length of the Pacific Challenger as part of the renewal application for the Pacific Challenger's permit.  (AR 1221.)

In 2009, the National Marine Fisheries Services—a division of NOAA—promulgated a regulation called the Latent LLP Rule. 74 Fed. Reg. 41,080.  The rule authorized NOAA to remove certain "latent trawl regulatory area endorsements on LLP licenses" if the endorsement "ha[d] not made a minimum of two landings using trawl gear in a specific regulatory area during the period 2000 through 2006." Id.

In response to the Latent LLP Rule, RAM reviewed the groundfish licenses in Alaska fisheries. (AR 1702–05.)  In conjunction with that review, on September 22, 2009, RAM notified Pacific Dawn, LLC of a Preliminary Determination that RAM would remove the Western Gulf endorsement of LLG2608. (AR 525.)  RAM reached this conclusion based on the fact that the Amber Dawn had only made one landing, rather than the required two, and took the position that the number of landings made by the Pacific Challenger did not merge onto the Amber Dawn LLP.  (AR 1289.)

On November 6, 2009, RAM issued an Initial Administrative Determination ("IAD") adopting its Preliminary Determination to revoke the Western Gulf endorsement.  (AR 1280–90.) On December 18, 2009, Pacific Dawn, LLC filed an appeal of that decision.  (Id.)  On March 2, 2010, Administrative Judge Mary Alice McKeen affirmed that IAD.  (Id.)  Pacific Dawn, LLC then filed a motion for reconsideration of that decision.  (Id.)

On December 8, 2010, Judge McKeen denied the motions for reconsideration, and once again affirmed the IAD.  (Id.)  Judge McKeen's December 8, 2010 decision states that the

1   endorsement revocation "takes effect January 7, 2011, unless by that date by that date the

2   Regional Administrator orders review of the Decision." (AR 1291.)  On December 8, 2010,

3   Judge McKeen's decision was sent by certified mail and email to Plaintiffs' attorney.  (AR

4   1293.)  Plaintiffs' attorney received this notice.  (AR 1297.)

5          Under the governing regulations, "[a]n appellate officer's decision is subject to review by

6   the Regional Administrator," who has 30 days to "affirm, reverse, modify, or remand the

7   appellate officer's decision" or "issu[e] a stay of the decision."  50 C.F.R. § 679.43(o).  "The

8   Regional Administrator's decision to affirm, reverse, or modify an appellate officer's decision is

9   final agency action for purposes of judicial review."  Id.  If the Regional Administrator takes no

10  action whatsoever, the decision becomes final.  Id.

11         On January 12, 2011, NOAA addressed a letter to Mr. Parker and Pacific Dawn titled

12  "FINAL AGENCY ACTION," which informed Mr. Parker and Pacific Dawn that the decision

13  "has become the Final Agency Application, effective January 7, 2011." (AR 1276.)  Enclosed

14  with the letter was the "revised permanent LLP groundfish license reflecting the endorsements

15  for which it was determined you qualify"—excluding the Western Gulf endorsement.  (Id.)

16         NOAA did not send this letter to the address Pacific Dawn, LLC provided in 2005; nor

17  did it send the letter to the attorney to whom it had sent Judge McKeen's decision.  (Id.)  Instead

18  it used an address belonging to a former owner of Pacific Dawn, LLC, Chet Peterson.  (Id.)  Mr.

19  Peterson did not deliver the letter to Pacific Dawn, LLC until months later.  (AR 676.)

20         Between January 21, 2011 and January 31, 2011, the Pacific Challenger fished three

21  times in the Western Gulf for groundfish.  (Id.)  During this period, Plaintiff harvested over 1.2

22  million pounds of groundfish from the Western Gulf, a revenue of $312,941.  (AR 526.)

23

24

1    On August 27, 2012, NOAA issued a Notice of Violation and Assessment of

2    Administrative Penalty ("NOVA") to Plaintiffs.  (AR 1351–57.)  The NOVA stated that the three

3    fishing trips the Pacific Challenger took between January 21, 2011 and January 31, 2011 violated

4    two federal regulations.  (Id.)  Specifically, it stated that: (1) Pacific Challenger could not fish in

5    the Western Gulf because the relevant endorsement had been revoked two weeks earlier; and (2)

6    the Pacific Challenger could not fish in the Western Gulf because its length exceeded the

7    maximum overall length of its permit.  (Id.)

8        Plaintiffs appealed the NOVA by requesting a hearing in accordance with 15 C.F.R. Part

9    904.  (AR 668.)  NOAA assigned the hearing to Administrative Law Judge Susan L. Biro, the

10   Chief ALJ of the Environmental Protection Agency.  (Dkt. No. 13 at 14.)

11       Pacific Dawn, LLC made the following three arguments in the proceeding: (1) NOAA's

12   failure to properly notify Pacific Dawn, LLC that it had revoked the Western Gulf endorsement

13   barred NOAA from assessing any penalty; (2) Pacific Dawn, LLC was justified in relying on

14   NOAA's confirmation that the Pacific Challenger LLP remained valid even after it had

15   lengthened the vessel; and (3) even if federal regulations permitted NOAA to assess a civil

16   penalty, the circumstances of this case merited either the assessment of a significantly lower

17   penalty or no penalty at all.  (AR 599–627.)

18       Judge Biro rejected Plaintiffs' arguments, (AR 677–718), and found that Plaintiffs did not

19   possess an endorsement for groundfish in the Western Gulf for the Pacific Challenger.  However,

20   Judge Biro did not agree with NOAA's assessed penalty and instead imposed a penalty of

21   $223,905 for the violations, using a base penalty of $15,000 per count, combined with an

22   economic benefit based on the net proceeds from each fishing trip.  (Id.)

23

24

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT- 6

1    NOAA petitioned Judge Biro for reconsideration of the assessed penalty.  (AR 726.)

2  That petition was denied.  (AR 768.)  NOAA and Plaintiffs appealed Judge Biro's decision to the

3  NOAA Administrator.  (AR 783, 910.)  The NOAA Administrator denied both petitions.  (AR

4  1131.)

5    Plaintiffs commenced this suit on October 7, 2015.  (Dkt. No 1.)  In this suit, Plaintiffs

6  ask the Court to vacate the findings of liability and the penalty assessed against Pacific Dawn,

7  LLC, arguing: (1) they did not receive proper notice; (2) the penalty assessed is excessive; and

8  (3) Judge Biro's decision is unconstitutional under the Appointments Clause.  (Dkt. No. 1.)  The

9  Parties have filed Cross-Motions for Summary Judgment addressing these issues.  (Dkt. Nos. 13,

10  18.)

11                                    **Discussion**

12  **I.    Legal Standard**

13       **A.  Summary Judgment**

14    Summary judgment is proper where "the movant shows that there is no genuine issue as

15  to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

16  56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue

17  of fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In assessing whether a party has met

18  its burden, the underlying evidence must be viewed in the light most favorable to the non-

19  moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

20    Claims seeking review of administrative action are resolved on cross-motions for

21  summary judgment based on the Administrative Record.  Fence Creek Cattle Co v. U.S. Forest

22  Serv., 602 F.3d 1125, 1131 (9th Cir. 2010).  Under the APA, a court may set aside the agency's

23  decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

24  law."  5 U.S.C. § 706(2)(A); Or. Trollers Ass'n v. Gutierrez, 452 F.3d 1104, 1116 (9th Cir.

2006).  In addition, "[a] direct constitutional challenge is reviewed independent of the APA," and "[a]s such the court is entitled to look beyond the administrative record" in regard to such a claim.  <u>Grill v. Quinn</u>, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012) (citations omitted).

## II.   Cross-Motions for Summary Judgment

### A.  Notice Regarding Final Action to Revoke Amber Dawn LLP

Fisheries permits are property interests to which the Due Process Clause applies.  <u>See Foss v. Nat'l Marine Fisheries Serv.</u>, 161 F.3d 584, 588 (9th Cir. 1998).  "Due process . . . require[s] notice reasonably calculated, under all circumstances, to provide . . . notice of an adverse action" related to a recognized property interest.  <u>Yi Tu v. Nat'l Transp. Safety Bd.</u>, 470 F.3d 941, 945 (9th Cir. 2006).

Plaintiffs argue NOAA cannot assess any penalty the agency's notice was not reasonably calculated to notify Pacific Dawn, LLC that NOAA had taken a final step to revoke the Western Gulf endorsement.  (Dkt. No. 13 at 16–20.)  Specifically, Plaintiffs contend: (1) the letter sent by NOAA on January 12, 2011 was the Regional Administrator affirming the appellate officer's decision and was sent to the wrong address; and (2) that in order for a revocation decision to become final under the relevant regulations, the Regional Administrator must act in some capacity, or notify the parties that he or she will not act on the appellate officer's decision.  (<u>Id.</u>)

Defendants argue Plaintiffs' position is based both on a misreading of the relevant regulations, and on a misunderstanding of the January 12, 2011 letter.  (Dkt. No. 18 at 16–20.)  For reasons stated below, the Court agrees with Defendants.

50 C.F.R. § 679.43, the regulation that is at the center of the Parties' dispute, provides in relevant part:

> (k)  Appellate officers' decisions. The appellate officer will close the record and issue a decision after determining there is sufficient information to render a decision on the record of the proceedings and that all procedural requirements

have been met.   The decision must be based solely on the record of the proceedings.   Except as provided in paragraph (o) of this section, an appellate officer's decision takes effect 30 days after it is issued and, upon taking effect, is the final agency action for purposes of judicial review.

* * *

(o) Review by the Regional Administrator.   An appellate officer's decision is subject to review by the Regional Administrator, as provided in this paragraph (o).

(1) The Regional Administrator may affirm, reverse, modify, or remand the appellate officer's decision before the 30-day effective date of the decision provided in paragraph (k) of this section

(2) The Regional Administrator may take any of these actions on or after the 30-day effective date by issuing a stay of the decision before the 30-day effective date.

* * *

(4)  The Regional Administrator must promptly notify the appellant(s) of any action taken under this paragraph (o).

50 C.F.R. § 679(k) & (o) (emphasis added).

Plaintiffs first argue that the January 12, 2011 letter—which was mailed to the wrong address—was the Regional Administrator's decision affirming the appellate officer's decision under the above-cited regulations.  (Dkt. No. 13 at 17–20.)  Plaintiffs point to the fact that the letter is titled "FINAL AGENCY ACTION."  (Id. at 17); see also (AR 1276.)  They further point to the fact that the letter "was directed by the Regional Administrator for the Alaska Region, the agency official NOAA regulations entrust with the final say on whether to affirm an OAA decision." (Dkt. No. 13 at 17.)  Plaintiffs contend that because this letter was not mailed to the correct address, NOAA cannot assess a penalty.  (Id.)

1    Plaintiffs' first argument is unavailing.  The text of the letter sent on January 12, 2011

2  does not support Plaintiffs' position that the Regional Administrator affirmed the appellate

3  officer's decision.  (AR 1276.)  Rather, the letter states the appellate officer's decision became

4  final on January 7, 2011, thereby supporting Defendants' position that the Regional

5  Administrator did not act within the 30-day effectiveness time frame.  (Id.)  Further, as

6  Defendants point out in their Motion, (Dkt. No. 18 at 18), the letter itself is dated January 12,

7  2011.  (See AR 1276.)  By that date, the appellate officer's decision had already become final

8  under the relevant regulations; therefore, the Regional Administrator could not affirm the

9  appellate officer's decision on that date.  Finally, there is no language in the January 12, 2011

10  letter that suggests the Regional Administrator acted in any capacity under 50 C.F.R. §679.43(o)

11  with respect to the appellate officer's decision.  (Id.)

12    Plaintiffs then argue that in order for a revocation decision to become final, the Regional

13  Administrator must act in some capacity, or notify the parties that he or she will not act on the

14  appellate officer's decision.  (Dkt. No. 13 at 19.)  They contend that without any such

15  notification, "the permit holder [is] unaware of when he or she is free to challenge that final

16  decision."  (Id.)

17    This argument is also unavailing, because the above-cited regulations state that if the

18  Regional Administrator does not act within the 30-day effectiveness period, the appellate

19  officer's decision becomes effective and is final for purposes of judicial review.  See 50 C.F.R.

20  679.43(k) & (o).  However, if the Regional Administrator wants to take some action with respect

21  to the appellate officer's decision, he or she may do so within the 30-day effectiveness period.

22  Id.  If the Regional Administrator takes any action with respect to the appellate officer's decision

23  on or after the 30-day effective date, he or she must issue a stay of the decision before the 30-day

24

1    effective date.  Id.  The regulations also require the Regional Administrator to promptly notify

2    the permit holder of any action taken.  Id.  Therefore, contrary to Plaintiffs' assertions, the permit

3    holder not left unaware of whether he or she can challenge the final decision.

4         Here, Plaintiffs were provided notice of the appellate officer's decision on December 8,

5    2010.  (AR 1297.)  The decision states "[t]his Decision takes effect January 7, 2011, unless by

6    that date the Regional Administrator orders review of the Decision."  (AR 1291.)  Under 50

7    C.F.R. § 679.43, the appellate officer's decision became effective on January 7, 2011.  Viewing

8    these facts in the light most favorable to Plaintiffs, the Court finds Plaintiffs received notice of

9    the appellate officer's decision prior to their January 2011 fishing efforts and, therefore, the

10   penalty assessed does not violate due process.

11              **B.  Amount of Penalty**

12        The Court may vacate an excessive penalty under two standards.  First, the Court may

13   reverse any penalty if it "is unwarranted in law or unjustified in fact."  Bosma v. USDA, 754

14   F.2d 804, 810 (9th Cir. 1984).  Second, it may vacate a penalty under the Eighth Amendment

15   that is "grossly disproportional to the gravity of [the] offense."  United States v. Bajakajian, 524

16   U.S. 321, 324 (1998).

17        Plaintiffs argue that even if due process permitted a penalty, the penalty assessed in this

18   case, $223,905, was excessive and grossly disproportional to Pacific Dawn, LLC's offense.

19   (Dkt. No. 13 at 20–22.)  Plaintiffs ask the Court to vacate the penalty imposed for two reasons:

20   (1) Judge Biro based her analysis of the penalty factors on the false premise that Pacific Dawn,

21   LLC imperiled the interests of the fishery because NOAA had authorized Pacific Dawn, LLC to

22   fish in the Western Gulf under the Pacific Challenger LLP; and (2) Judge Biro's emphasis on

23   deterrence was misplaced because it is unbelievable that anyone would repeat Pacific Dawn,

24   LLC's actions.  (Id.)

1       Defendants argue Judge Biro's analysis demonstrates the penalty assessed in this case

2  was well within the permissible statutory range, justified in fact, and, therefore, not grossly

3  disproportionate.  (Dkt. No. 18 at 20–22.)  Defendants point to the fact that Plaintiffs fail to

4  identify any required factor Judge Biro failed to consider, or to demonstrate Judge Biro's

5  consideration of the required factors was arbitrary or capricious.  (Id. at 21.)

6       The Court agrees with Defendants.  The record before the Court demonstrates that Judge

7  Biro considered the requisite statutory factors when determining the penalty, including: the

8  nature, circumstances, extent, and gravity of the prohibited acts; the degree of culpability and

9  any history of prior offenses; and such other matters as justice may require.  (AR 708–17.)

10  Based on these factors, Judge Biro rejected NOAA's calculated penalty, $325,441.76, in favor of

11  a lower penalty.  (AR 717) ("The undersigned finds that the Agency's proposed penalties are too

12  high with respect to economic benefit, but too low with respect to a base penalty.")

13       Plaintiffs' first argument is unavailing, because, as Judge Biro pointed out in her opinion,

14  Plaintiffs "lacked a license for the vessel they did use."  (AR 710.)  The fact that Plaintiffs

15  possessed a license for a different vessel is irrelevant.  Plaintiffs' second argument regarding

16  deterrence is also unavailing, because it is based on a misreading of the Judge Biro's opinion.

17  Judge Biro found the penalty imposed would deter both Plaintiffs and others from "fishing

18  without a clear understanding of which license they are authorized to fish under."  (AR 714.)  As

19  Defendants point out in their Motion, this is especially important in a tightly regulated fishery

20  where failure to comply with the relevant regulations might result in "excessive fishing or other

21  adverse impacts to the resource."  (Dkt. No. 18 at 22.)

22

23

24

1    Viewing the relevant facts, including Judge Biro's findings, in the light most favorable to

2    the Plaintiffs, the Court finds the penalty imposed by Judge Biro was justified in fact and not

3    grossly disproportional.

4        **C. Appointments Clause**

5    The Appointments Clause sets forth two categories of executive officers.  First, there are

6    "[p]rincipal officers . . . selected by the President with the advice and consent of the Senate."

7    Buckley v. Valeo, 424 U.S. 1, 132 (1976).  Second, there are "[i]nferior officers," who can

8    always be appointed in the same manner as principal officers but also who "Congress may allow

9    to be appointed by the President alone, by the heads of departments, or by the Judiciary."  Id.

10    Plaintiffs argue the Court should vacate the penalty because Judge Biro did not have the

11    Constitutional authority to serve as inferior officer within NOAA or the Department of

12    Commerce. (Dkt. No. 13 at 22–26.)  Specifically, Plaintiffs contend that although Judge Biro

13    served as an "inferior officer" within NOAA, Judge Biro was not appointed by the head of the

14    department for which she acted and was, therefore, not a properly appointed officer.  (Id.)

15    Defendants argue Plaintiffs' challenge to Judge Biro's appointment is not properly before

16    the Court and lacks merit. (Dkt. No. 18 at 23–33.)  They contend the Court should not reach

17    Plaintiffs' Appointments Clause argument, because Plaintiffs failed to raise this argument before

18    Judge Biro or before the Administrator.  (Id. at 23.)  Defendants further contend that Judge Biro

19    was appointed by the Administrator of the Environmental Protection Agency, and no separate

20    appointment was required for Judge Biro to preside over NOAA administrative proceedings.  (Id.

21    at 24–33.)

22    Viewing the underlying facts in the light most favorable to Plaintiffs, the Court finds

23    Judge Biro was a properly appointed officer, and, therefore, declines to reach Defendants'

24    argument regarding waiver.  Judge Biro was appointed by the Administrator of the

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT- 13

1    Environmental Protection Agency, one of the heads of departments whom Congress may

2    authorize to appoint inferior officers.  (Dkt. No. 14-5 at 2.)  No separate appointment was

3    required for Judge Biro to preside over NOAA administrative proceedings pursuant to an

4    interagency agreement under the ALJ loan program.  See 5 U.S.C. § 3344 ("An agency . . .

5    which occasionally or temporarily is insufficiently staffed with administrative law judges . . .

6    may use administrative law judges selected by the Office of Personnel Management from and

7    with the consent of other agencies.")

8          Plaintiffs argue this statute cannot support Judge Biro's arrangement with NOAA,

9    because "NOAA has used ALJ Biro and judges of the EPA for almost five years."  (Dkt. No. 21

10   at 22.)  This argument is without merit because Section 3344 does not impose a limit on how

11   long an agency can use an ALJ from another agency.  5 U.S.C. § 3344.  Finally, as Defendants

12   point out in their Motion, "Congress's intent that ALJ's core duties and responsibilities be

13   similar across agencies, and its creation of a statutory loan program, reflect its judgment that the

14   role of an ALJ at one agency may appropriately be performed by an ALJ from another agency."

15   (Dkt. No. 18 at 25.)  In light of this statutory scheme and Judge Biro's appointment by the

16   Administrator of the EPA, the Court declines to rule in Plaintiffs' favor on their Appointments

17   Clause challenge.

18          **D.  Interest**

19          31 U.S.C. § 3717(a) provides "[t]he head of an executive, judicial, or legislative agency

20   shall charge a minimum annual rate of interest on an outstanding debt on a United States

21   Government claim owed by a person . . ."  Interest accrues from the date the notice was mailed.

22   31 U.S.C. § 3717(b).  "The rate of interest charged under subsection (a) of this section is the rate

23   in effect on the date from which interest begins to accrue; and remains fixed at that rate for the

24   duration of the indebtedness." 31 U.S.C. §3717(c).

1    Defendants ask the Court to assess interest against Plaintiffs.  (Dkt. No. 18 at 33–34.)

2  They point to the fact that the Notice of Violation became final on September 8, 2015.  (AR

3  1134.)  Defendants contend interest should be assessed against Plaintiffs from September 8, 2015

4  until the date the penalty is paid.  (Dkt. No. 18 at 33–34.)  Plaintiffs do no address this argument

5  in the briefing they have submitted to the Court.  (Dkt. Nos. 18, 21.)

6    Because Plaintiffs do no address Defendants' argument regarding interest and because

7  the Court has found the penalty was proper, the Court will assess interest on the penalty imposed

8  from September 8, 2015 through the date of payment.

9                                    **Conclusion**

10    The Court GRANTS Defendants' Motion for Summary Judgment, (Dkt. No. 18), and

11  DENIES Plaintiffs' Motion for Summary Judgment, (Dkt. No. 13).

12    The clerk is ordered to provide copies of this order to all counsel.

13    Dated this 1st day of September, 2016.

14

15                                    Marsha J. Pechman
                                      United States District Judge
16

17

18

19

20

21

22

23

24